TARVER *v.* J. W. SANDERS COTTON MILL, INC.

(Division B. Nov. 13, 1939. Suggestion of Error Overruled Dec. 11, 1939.)

[192 So. 17. No. 33843.]

**Roach & Jones**, of McComb, for appellant.

**Watkins & Eager,** of Jackson, for appellee.

Argued orally by **Bert Jones**, for appellant, and by **Pat Eager**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

F. T. Tarver, the appellant, was plaintiff in the court below and brought suit against J. W. Sanders Cotton Mill, Inc., and Ben Harris, an individual who was night-watchman at the mill of the defendant J. W. Sanders Cotton Mill, Inc. It was alleged in the bill that the J. W. Sanders Cotton Mill, Inc., owns a large tract of land at Magnolia, Mississippi, on a part of which the mill is located; that the mill and the outlying warehouses and offices are surrounded by a heavy steel wire fence, about 10 feet high, and that on the south of the mill there is a spur railroad track which extends from said mill south-easterly across the land of the defendant J. W. Sanders Cotton Mill, Inc., to the tracks of the Illinois Central Railroad Company, and that at the point where said spur track intersects said wire fence on the south there is a large double gate, which, when open, leaves a space wide enough for railroad cars to enter the enclosed premises; that south of the said wire fence there is a path or road-way which extends across the premises of the J. W. Sanders Cotton Mill, Inc., leading to the houses of the employees of the said J. W. Sanders Cotton Mill, Inc., and that the said path or roadway crosses said spur track just a few feet south of the double gate; and that this path or roadway is used, with the knowledge and consent of said corporation, by the employees and also by members of their families and the general public at all

times of the day and night in going to and from points south of the said mill to the business sections of Magnolia.

That on the night of the 26th of February, 1939, the defendant Ben Harris was employed by the defendant J. W. Sanders Cotton Mill, Inc., in the capacity of night-watchman, and among other duties of the said Ben Harris, as night-watchman, was the duty of preventing all persons not entitled to be within the enclosed premises of said Cotton Mill at night from entering said premises, and that Ben Harris also had general authority from the J. W. Sanders Cotton Mill, Inc., to protect and guard the property and premises of the Cotton Mill at night, and to prevent any unauthorized trespass thereon. It was then alleged that the plaintiff, about said date, was passing along said roadway or pathway and became sick and sat down on a cross-tie outside of the said enclosure, and that he was directed by Ben Harris to move on, that he told Harris he was sick and unable to move, and that Harris came out of the enclosure and assaulted him with a pistol, inflicting injury upon him; and that at the time Ben Harris committed the aforesaid assault he was acting within the scope of his employment as night-watchman of the J. W. Sanders Cotton Mill, Inc., and in and about the performance and discharge of his duties as such night-watchman; that the blows rendered the plaintiff unconscious, and that he was still suffering from injuries so inflicted, and that he brought suit for $10,000 actual and punitive damages.

On the trial Ben Harris was introduced as an adverse witness and testified that he was employed as night-watchman by the J. W. Sanders Cotton Mill, Inc., to prevent injuries and trespasses within the enclosed premises, wherein the mill and other buildings were situated, but that he had no authority to go outside of the enclosure and no duties to perform outside of the enclosure, but that his authority was limited to keeping persons, who do not belong inside, out of the enclosure, and protecting the property therein enclosed. Harris

further testified that the appellant came along on the evening in question drunk and boisterous, and started to come in the mill enclosure, but did not or could not get over the fence, and that he started toward the gate and fell into a manhole, situated outside of the enclosure; that he (Harris) went out to assist the plaintiff to get out of the manhole and did assist in pulling him out, whereupon the plaintiff, being drunk, assaulted Harris, and that he struck the plaintiff in self-defense, but that he made no effort to make the plaintiff move on or to protect the property outside the enclosure from trespass.

The plaintiff and another witness introduced by plaintiff testified that the assault occurred outside of the enclosure, and that Ben Harris ordered the appellant to move on and that the appellant was sick and unable to move and that someone would come for him; and that Harris assaulted the appellant while he was sitting on the cross-tie, and knocked him to his knees and inflicted injuries upon him.

There was no dispute of Ben Harris' testimony as to the scope of his employment, and no evidence was introduced to show any statements or acts from the master J. W. Sanders Cotton Mill, Inc., as to any apparent authority, or any act from which such authority to go outside the mill could be deduced.

At the close of the evidence the court granted a peremptory instruction in favor of the J. W. Sanders Cotton Mill, Inc., and thereupon the plaintiff took a non-suit as to Ben Harris and appealed to this Court from the judgment entered upon the peremptory instruction.

It is fundamental that a person may employ a person to act for him in any particular where a person or corporation may act, and that he may limit the scope of action of the employee, giving to the employee only such power to do such acts as the master may deem appropriate or proper. The servant has no power to bind the master outside of the real or apparent scope of his authority and while engaged in the furtherance of the master's

business, and if he does so the master is not responsible for his acts. The master is only liable for torts committed by servants when they are done within the scope of the authority real or apparent of the servant, and also in furtherance of the master's business. There are many cases in this state dealing with this subject, and it is sufficiently indicated in 10 Mississippi Digest, Master and Servant, key 302, (1) to (6), inclusive.

The term "apparent authority" has been often defined in books, and definitions thereof will be found in 1 Words and Phrases, Second Series, p. 241, under title "Apparent Authority." Among the best definitions thereunder that I have found, which are applicable to the present case, are the following: "An act is within the 'apparent' scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it from the character of the duties which are known to be intrusted to him." Citing Townsend v. Missouri Pac. Ry. Co., 88 Kan. 260, 128 P. 389, 390.

" 'The "apparent authority" of an agent, which will bind his principal, is such as the agent appears to have by reason of the actual authority which he has.' " (Citing authorities.)

"The 'apparent authority' of an agent is such authority as the acts or declarations of the principal give the agent the appearance of possessing." (Citing authorities.)

"The 'apparent authority' of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing." (Citing authorities.)

" 'Apparent authority' in an agent to represent his principal exists when the principal permits the agent to exercise powers not expressly granted; but such apparent power is to be determined, not by the acts of the agent, but by the acts of the principal, and it must appear that they were relied and acted upon in good faith to justify

a third person in dealing with the agent.'' (Citing authorities.)

It appears in the present case that the premises upon which the mill and the warehouses were situated were enclosed by a tall wire fence, and that the agent or nightwatchman performed his duties in the enclosure. There is nothing to show that he had any other authority, and is testimony as to his authority is not contradicted by other proof. It is not customary, we think, for property owners to employ nightwatchmen to guard the wild wood or the vacant spaces. They may, of course, do so if they desire, but in the present case we do not think authority to go outside the enclosure can be presumed, and there is nothing to show that the master had knowledge that Harris was attempting to exercise any authority outside of the enclosure, or that he held him out as having such authority.

It follows from these views that the judgment of the court below must be affirmed.

Affirmed.