Jenkins, d.b.a. Motor Transportation Service *v.* Cogan.

No. 41356 April 4, 1960 119 So. 2d 363

544

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellant.

*Prewitt & Bullard*, Vicksburg, for appellee.

HOLMES, J.

The appellee, Bobby Trenton Cogan, brought this suit in the Circuit Court of Warren County against the appellant, Don Jenkins d/b/a Motor Transportation Service, seeking the recovery of damages, actual and punitive, for personal injuries alleged to have been sustained as the result of a liquefied petroleum gas explosion. Liability of the appellant was predicated upon the alleged negligence of Clifton Willis, a servant and em-

ployee of the appellant, allegedly acting in furtherance of his master's business and within the real or apparent scope of his authority, in undertaking to remove from the saddle tank on a propane propelled truck a vapor return valve and install a new one thereon.

The appellant answered denying that he was chargeable with any negligence in the premises and averred that the acts of the said Clifton Willis were not within the scope of his employment; that the said Willis was not a licensed and qualified installer and repairer of liquefied petroleum gas systems as defined in Section 5104-03(c), Code of 1942, and that this was known to the appellant, and that the acts of the said Willis were in violation of the statute and regulations governing the installation and repair of liquefied petroleum gas systems, and were contrary to express instructions given him by the appellant, and were beyond the scope of his employment. The trial resulted in a jury verdict for the appellant, awarding him damages in the sum of $3830. From the judgment entered, the appellant has appealed to this Court, and the appellee has cross-appealed upon the grounds of inadequacy of the amount of the verdict.

The evidence providing the setting for the unfortunate tragedy revealed by this record is not disputed. We relate it briefly.

On and prior to May 30, 1957, the appellant operated a service station located on Warrenton Road in the City of Vicksburg. He operated on the same premises a cafe or restaurant. He employed at the service station Charles Toney, a white man, as day manager, Clifton Willis, a young colored man, as a service station attendant, and Eddie Daniels, a white man, who was in charge of the service station at night. Both Toney and Willis were on duty from six A. M. to six P. M. Daniels was on duty from six P. M. to six A. M. The appellant himself devoted about twelve hours a day to the operation of the station and according to his own statement, gave very close supervision to the operation of the

station. The appellant also had employees in the cafe. The appellant sold at his service station gasoline, diesel fuel, motor oil, butane or propane gas, tires, batteries, oil filters, head lights, lighter fuel, machine oil, car polish, radiator flush, and related articles commonly obtained at a service station or filling station. He also serviced motor vehicles, consisting of washing, greasing, checking the differential and transmission, filling the gas tanks with gas and checking under the hood.

On May 30, 1957, the appellee was employed by the Dallas Tank Company of Vicksburg, having been so employed since August 1956. He was employed as a truck driver. The truck which he drove were propelled by liquefied petroleum gas. He hauled tanks and steel and delivered the same at designated points of delivery. A few days prior to May 30, 1957, he drove one of the trucks to Paducah, Kentucky to deliver a load of tanks at the Atomic Energy Plant there. On the journey he discovered that the vapor return valve on the left saddle tank was leaking. He capped it to prevent vapor or gas from escaping. On his return trip he purchased a new vapor return valve at Tunica, Mississippi, with the intention of installing it on his return. He arrived back at the Dallas Tank Company place late in the evening of May 29, 1957. He had placed the new vapor return valve in the glove compartment of the truck. The following morning, about eight o'clock, he took the truck to the appellant's service station to be serviced, that is, to be washed, greased, the transmission and differential checked, and the truck "gassed up." He left the truck at the service station, saying he would be back about twelve o'clock. The grease rack and wash rack were located back of the service station building and at a distance of about ten or twelve feet from the building. A door opened out from this side of the building to the area of the grease rack and wash rack. This door led from a small storage room in which was a heater with the pilot light burning. When the appellee left the truck

at the station to be serviced, he said to Clifton Willis, the following: "I asked him if he knew how, would he, if he had time, put it (the new vapor return valve) on. He said 'O.K.' I told him not to go to any extreme or anything to do it and when I came back, well, he hadn't, so I said that is all right, I will take care of it." The appellee then left the station saying he would be back about twelve o'clock. Neither the appellee nor Willis were qualified as liquefied petroleum gas systems installers and repairers as defined in Section 5104-03(c), Code of 1942, as follows: "Any person who has satisfactorily passed an examination under the direction of the director, or one of the liquefied compressed gas inspectors, and who holds a liquefied compressed gas equipment installer's certificate as hereinafter provided for."

The other evidence in the case is conflicting. The appellee testified that when he got back to the station about twelve o'clock, Willis had not finished greasing the truck and had not installed the new vapor return valve; that he told Willis that was all right, "he (meaning appellee) would take care of it"; that he opened two bleeder valves on the tank to let the pressure out; that he told Willis it would take about two hours for the air to bleed out of the tank; that when Willis finished greasing the truck, appellee asked him if he had a wrench or tool that would fit the vapor return valve; that he wanted to remove the defective valve and install a new one; that he does not recall whether Willis answered him; that he went to the rest room and when he came back he found Willis was taking out the vapor return valve; that he told him "not to do it, that was not right, there was too much air in it"; that the truck was then about ten or twelve feet from the building and that the appellee was approximately four or five feet behind the truck; that "all of a sudden" the valve blew out and made a loud noise and the steam came out and hit the back of the building; that the vapor was discharged into the atmosphere; that he backed away between the back of

the truck and his car and was fixing to open his car door when the explosion occurred and "it turned into a shield of fire." He caught fire and was badly burned about his back, ears, arms and hands. The record shows that the discharge of vapor or gas from the truck made its way through the open door of the storage room and was ignited by the flame of the pilot light on the heater, resulting in the explosion.

The appellee further testified that he had been taking his truck to appellant's service station to be serviced for sometime, and that on one occasion particularly he had seen Willis working on one truck, that was in February or March prior to the explosion; that the truck he was working on was close to the building and he was helping to adjust a propane gas carburetor and that the appellant was on the premises at the time.

Eddie Daniels testified that he was a former employee of the appellant and was working for him at the time of the explosion; that he went to work for him about the first part of May 1957; that he had seen Willis doing odd jobs about the station, putting on fuel lines on liquefied petroleum gas systems and adjusting vaporizers; that he saw him doing this type of work on big trucks at least four times; that sometimes the appellant was present and sometimes he was not. He said he had been instructed by the appellant not to do any repair work of any kind on anybody's vehicle. He further said that he had seen Willis put brake fuses on cars and make adjustments on other people's cars, and that sometimes the appellant was present and sometimes he was not.

The appellant testified that they did no repair work on vehicles at his station; that he had specifically instructed Willis not to do any repair work on anybody's vehicle, and that to his knowledge Willis had not engaged in such work. He admitted that on one occasion he had seen Willis assisting the driver of a truck to adjust the carburetor by holding the throttle wire to keep

the engine running while the adjustment was being made. He further testified that he had no equipment at the station for doing any kind of repair work on vehicles.

Lela Bell Funchess testified that at the time of the explosion she was working for the appellant in the cafe. She was a cook. Her hours were 7 A.M. to 3 P.M. She said that she was in the kitchen at the time of the explosion; that Theresa, another employee in the kitchen, called her to come and look and she looked out the back kitchen door; that she saw a white man working on the tank; that Willis was standing with one hand on the truck and the other "playing in the stuff." She said that she walked on back and just as she got further along there was a sound like a back-fire and the kitchen lit up and everybody broke and ran. She said she saw Willis with his clothes aflame and she ran out and caught him in his belt and tried to extinguish the fire. She said that the fire was finally extinguished and an ambulance was called.

The appellant contends that the trial court erred in overruling his motion for a directed verdict at the conclusion of the evidence for the plaintiff, and in not granting the defendant's request for a peremptory instruction at the close of all of the evidence, and in overruling the defendant's motion to set aside the verdict, and in overruling the defendant's motion for a new trial, and in not holding that the verdict was against the overwhelming weight of the evidence. We consider these contentions together. The vital issue presented is whether Willis undertook in a negligent manner to remove the valve and was acting at the time as the servant and employee of the appellant and in furtherance of his master's business and within the real or apparent scope of his authority. The principles of law applicable to the issue here presented have frequently been announced in the decisions of this Court and in textbook authorities.

In the case of Tarver v. Sanders Cotton Mill, Inc., 187 Miss. 111, 192 So. 17, the Court said: "It is funda-

mental that a person may employe a person to act for him in any particular where a person or corporation may act, and that he may limit the scope of action of the employee, giving to the employee only such power to do such acts as the master may deem appropriate or proper. The servant has no power to bind the master outside of the real or apparent scope of his authority and while engaged in the furtherance of the master's business, and if he does so the master is not responsible for his acts. The master is only liable for torts committed by servants when they are done within the scope of the authority real or apparent of the servant, and also in furtherance of the master's business.''

In the case of Walters v. Stonewall Cotton Mills, 136 Miss. 361, 106 So. 495, the Court said: ''In order to hold the master liable for the wrongful act of his servant it is not necessary to show that the act in question was either expressly or impliedly authorized by the master. If the servant, when he committed the wrongful act, was acting in furtherance of the master's business, for which he was employed, the master is liable, although the servant in doing the act, contrary to the instructions of the master, went beyond his authority.''

In 35 Am. Jur., Master and Servant, Section 559, appears the following: ''The courts are generally agreed that an employer may be held accountable for the wrongful act of his employee committed while acting in his employer's business and within the scope of his employment, although he had no knowledge thereof, or had disapproved it, or even expressly forbidden it. Also, as a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer.''

In 57 C.J.S., Master and Servant, Section 557, page 269, appears the following: ''So also the master is liable for a tortious act of his servant . . . . where the unauthorized act of a servant is performed with the knowledge

and apparent approval of those authorized to represent the master by reason of the master's knowledge of, and acquiescence in, previous acts of the servant of a similar character, although the acts were not within the scope of the servant's employment. Nevertheless, in order to charge the master with liability for unauthorized acts of the servant, it must be shown that he had either actual notice of such acts or that they were committed so frequently and under such circumstances as to justify the presumption of notice.''

In 35 Am. Jur., Master and Servant, page 994, appears the following: ''In short, when it is asserted that the employee acted without the knowledge of the employer and without his approval, or in violation of his orders and instructions, the question of liability, as in other cases, is determined by whether the employee was in fact acting within the scope of his *implied* or *apparent* authority.'' (Emphasis ours)

██ █ We think that the conflicting testimony created an issue of fact for the determination of the jury as to whether or not Willis negligently removed the valve in question. It is not questioned that if Willis removed the valve he was guilty of negligence in doing so. █ We think that the conflicting testimony further raised an issue of fact as to whether or not the appellant knew or should have known that Willis was working on butane or propane propelled trucks and acquiesced therein, and whether or not the appellant thereby impliedly authorized the said Willis so to do, and, therefore, whether or not at the time of the explosion the said Willis was acting within the scope of his implied or apparent authority. These issues were submitted to the jury under appropriate instructions and the jury resolved such issues in favor of the appellee, and in our opinion were warranted under the evidence in doing so. It is our conclusion, therefore, that the foregoing contentions of the appellant are not well founded.

■■■ It is further contended by the appellant that the court erred in granting to the appellee instructions involving the theory of apparent authority. The general rule is well recognized, as shown by the authorities hereinbefore cited, that where a servant commits a tortious act in furtherance of his master's business and within the real or apparent scope of his authority, the master becomes liable notwithstanding the fact that the act may not have been within the actual scope of the servant's employment. We are, therefore, of the opinion that the court committed no error in so instructing the jury.

■■■ It is further contended by the appellant that the court erred in excluding the rules and regulations of the Motor Vehicle Comptroller. It does not appear in the record that the printed pamphlet offered in evidence by the appellant and purporting to be the rules and regulations of the Motor Vehicle Comptroller were properly authenticated, and, therefore, the court was not in error in excluding the same, although the court did not base its ruling upon this ground but upon the ground that the same were immaterial. ■■■ If it be conceded, however, that court was in error in its ruling, we do not think that the same was reversible error in view of the fact that there was ample testimony as to what the rules and regulations were with respect to the material issues here involved, and therefore the ruling of the court was not prejudicial. ■■■ We are of the opinion, however, that the rules and regulations of the Motor Vehicle Comptroller, had they been properly authenticated, would have been admissible in evidence.

■■■ It was also contended by the appellant that the court erred in excluding the report of the witness, O. W. Chance, who was the liquefied petroleum gas inspector. Mr. Chance appeared on the scene shortly after the explosion and made an investigation of the matter and filed with his superior a written report of his findings. It was this report which the appellant sought to introduce in evidence. We think that the court committed

no error in excluding the report. Mr. Chance was present in court as a witness and testified to what he saw and found at the scene of the explosion shortly after the explosion occurred. The exclusion of this report, therefore, could not have been prejudicial to the appellant.

The appellee prosecuted a cross-appeal, assigning as error the action of the trial court in denying his request for an instruction incorporating disfigurement as an element of damages. The question as to the right of appellee to recover damages for disfigurement is foreclosed by the cases of Vascoe v. Ford, et al., 212 Miss. 370, 54 So. 2d 541, and Rankin County, Mississippi v. Wallace, 230 Miss. 413, 92 So. 2d 661, wherein the court held that disfigurement was a proper element of damages. We think, therefore, that it was clearly error for the court to refuse an instruction authorizing the jury in the event they should find for the plaintiff to consider disfigurement as an element of damage.

We are accordingly of the opinion that the case should be affirmed on direct appeal and reversed on cross-appeal and remanded for trial on the issues of damages only.

However, we hold that upon a retrial of this case the evidence shall not be limited to the question of damages, but all of the facts should be presented to the jury for the jury's consideration on the question of negligence of all parties, and the jury shall have the right to apportion damages under the comparative negligence statute. Vaughan v. Bollis, et al, 221 Miss. 589, 73 So. 2d 160; Williams v. Clark, 110 So. 2d 365.

Affirmed on direct appeal, and reversed on cross-appeal and remanded for trial on the issue of damages only.

All Justices concur, except *Roberds, J.*, who took no part.