**NMS INDUSTRIES, INC., d/b/a J. A. Olson Company, Plaintiff-Appellee,**

v.

**PREMIUM CORPORATION OF AMERICA, INC., et al., Defendants,**

**Gold Crown Stamp Company, Inc., Defendant-Appellant.**

No. 73–1869
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 21, 1973.

Rehearing and Rehearing En Banc Denied Jan. 10, 1974.

Hardy Lott, Porter W. Peteet, William H. Roberson, Greenwood, Miss., for defendant-appellant.

William Liston, Winona, Miss., James E. Upshaw, Greenwood, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

PER CURIAM:

In the second appeal of this diversity case, we again find the defendant-principal attempting to disavow the acts of its agent for which two juries have found it to be liable. In the previous appeal of

---

2. NLRB Public Field Manual § 11424.4 (Rev.Ed.1971).

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

the case,[1] we reversed a jury verdict for the supplier, finding the District Court's instructions on the question of ratification by the principal of the acts of the agent were erroneous. The jury, having again determined that the principal was the author of its own dilemma, rendered a verdict for the supplier, apparently finding that the principal had cloaked the agent with the convincing appearance of authority. Now finding itself in the same corner, the principal attempts to extract itself on the same grounds as before. We find there is nothing new in this second appeal of the case, and accordingly we must affirm the trial court's judgment.

## The First Trial

Cutting through the broad spectrum of the many issues in this case as it was originally tried—and following the first appeal, as it was *re*-tried—the issues come down to a fairly simple question. The record indicates that at the time relevant to the questions under consideration, Edwards was an employee of the Gold Crown Stamp Company, maintaining his office at Shreveport, Louisiana. Edwards' duty was to investigate, initiate, and develop promotions at supermarkets in various southern states for Gold Crown, a trading stamp company. Prior to the events in question, Gold Crown was acquired by Gold Bond Stamp Company, which in turn was owned by Premium Corporation of America of Minneapolis, Minnesota. Following this change in the chain of command, Edwards began reporting and taking instructions from Eichenberg, a regional supervisor for Gold Bond. Edwards continued to maintain his office in the Gold Crown building at Shreveport, Louisiana, continued to use stationery bearing the corporate name of Gold Crown and business cards with his name and that of Gold Crown, and retained various other indicia of his continued affiliation with the Gold Crown Company.

In January of 1969, only about three months after the acquisition of Gold Crown by Gold Bond, Edwards began to develop the idea of an art print promotion for Gold Crown, which would be handled through many of the same supermarkets where the trading stamps were distributed to the public as premiums for their grocery purchases. The concept was that inexpensive art prints were to be offered as a bonus to shoppers who purchased a certain amount at the particular store. The frames would also be sold at a small price to accompany the prints.

We need not set out all the details—a brief description will suffice. In the early weeks of 1969, Edwards made several trips to the Olson Company plant at Winona, Mississippi. Letters were exchanged between Edwards and his superior, Eichenberg, regarding the feasibility of the proposed promotion. At some point during this period of time, some understanding, however tenuous and however unclear, was reached between Edwards and Eichenberg regarding the purchase of some quantity of the prints and frames. Whatever this understanding was, and to what quantity and what types of art prints and frames it may have extended is both unclear and disputed. But one thing remains clear. As Edwards testified, he believed that he had the authority to place an order for some quantity of the prints and frames. Nowhere is the contention made that Edwards intended to embarrass his employer by deliberately exceeding or misinterpreting his authority regarding the art print promotion. Whatever he may have understood his authority to be, the fact remains that Edwards did place orders with Olson Company for a rather large quantity of the art prints and frames. There is some indication that Eichenberg intended that perhaps 5,000 prints of each of several types should be ordered or perhaps only 5,000 altogether. Edwards ordered 5,000 prints of each of 128 different types, for

1. NMS Industries, Inc. v. Premium Corporation of America, Inc., 5 Cir., 1971, 451 F.2d 542.

a total of 640,000 individual prints. He further ordered some 48,000 frames, the total price of all being approximately $160,000. Subsequently, when the invoices began to be received at the company's main office in Minneapolis, and there were discovered to be no supporting purchase orders authorized pursuant to established company procedures, a company auditor questioned the transaction and brought the entire dealings to light. At this point, Gold Bond and the parent company Premium Corporation, immediately contacted Olson and attempted to disavow the order except to the extent of the prints already delivered in the amount of approximately $16,000. Having already made substantial commitments [2] regarding the prints and frames, Olson rejected the disavowal of the majority of the contract and the lawsuit arose.

The first trial of the case resulted in a jury verdict for Olson Company for the entire amount of the contract. On that first trial, one of the theories upon which Olson asserted the liability of Gold Crown was that of ratification by the principal of the acts of the agent. In stating the issues to the jury on the first trial, the Court made a subtle, but nonetheless unmistakable error.[3]

Finding that "ratification by the principal of the acts of his agent must be based on full, actual knowledge of the facts of the transaction" we held that the instruction was erroneous to the extent that it permitted the jury to find Gold Crown liable on the basis of ratification where it *should have known* of the facts of the transaction between the

agent and Olson Company. Accordingly, we reversed and remanded for a new trial with proper instructions. On the second trial the issue of ratification was dropped altogether and Olson proceeded only on the theories of actual or apparent authority of the agent. Even without the issue of ratification as a basis for liability, the jury was still inclined to find favorably for the plaintiff Olson Company.

*Instructions On The Second Trial*

On this second appeal we are again asked to review the instructions, Gold Crown contending that the trial court erred in instructing the jury that it could return a verdict on the theory of apparent authority and that the trial court should have granted a peremptory instruction on the question of liability. We easily dispose of these objections. When we sift through the contentions, it becomes clear that what Gold Crown now seeks is a directed verdict on the basic question of Edwards' apparent authority to bind the company in this transaction.

■■ More than merely objecting to the form of the instruction, what Gold Crown actually contends is that the instruction on apparent authority should not have been given at all. Gold Crown contends that the trial should have been only on the issue of the *actual* authority of Edwards to enter into the transaction and since it is undisputed that such actual authority did not exist at least so far as the company itself was concerned,[4] it was entitled to a directed verdict. We have carefully reviewed the

---

2. Olson itself did not manufacture the art prints. It ordered them from the Donald Art Company of New York and contracted for the necessary preparation of the prints for mounting. Olson was to manufacture the frames that would accompany the prints but which would be sold separately.

3. We have gleaned from a footnote in the prior report of the case, see note 1, *supra*, the substance of the erroneous instruction which the District Judge himself acknowledged was faulty. That colloquy sets out what the instruc-

tion was and the three requirements that the Court instructed the jury to find before it could ascertain a ratification by the principal. Despite the determination that the instruction had been erroneous, the Court declined to grant a motion for a new trial.

4. The record reveals undisputed testimony that a $50,000 limitation on expenditures existed, except as approved by the Executive Committee of the parent company. Olson Company contended that it was never informed of this secret limitation on Edwards' authority.

trial court's instructions to the jury. They are both clear and unambiguous, and in accord with accepted principles of Mississippi law which recognize the doctrine of apparent authority.[5] See Tarver v. J. W. Sanders Cotton Mill, 187 Miss. 111, 192 So. 17 (1939); Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955); McPherson v. McLendon, 221 So.2d 75 (Miss.1969); Union Compress & Warehouse Co. v. Mabus, 217 So.2d 23 (Miss.1968); American Casualty Co. v. Whitehead, 206 So.2d 838 (Miss.1968). And, having examined the record, we find that there was more than sufficient evidence to support the plaintiff's position. The testimony tended to show that Edwards did, in fact, use business cards, stationery and purchase orders (which bore no indication of a dollar-amount limitation), with the Gold Crown ensignia, that he did have an office maintained by Gold Crown, and that he apparently had made some purchases of a similar nature for the company previously. This was surely enough to warrant the denial, in the first instance, of a directed verdict. See Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365. It was further sufficient evidence upon which the jury could have inferred that Edwards was cloaked with the authority to make such a purchase for Gold Crown. Whether, as Gold Crown asserts, Olson Company should have inquired as to Edwards' authority, was a factual issue for the jury to decide. The factual issues now are twice resolved against Gold Crown.

It is clear that there was not only sufficient evidence in the record to warrant submission of the case to the jury, but that there was also sufficient evidence to justify the jury's verdict. Thus, it only remains for us to recognize the validity of the verdict of the second, and properly instructed jury. See Oil Screw

Noah's Ark v. Bentley & Felton Corp., 5 Cir., 1963, 322 F.2d 3, 1963 A.M.C. 271 (second appeal).

Affirmed.

---

5. It would serve no purpose to set out at length the oral transcript of the instructions. It suffices that the District Judge was cognizant of the prior reversal of the case on the basis of the erroneous instructions. He was therefore quite careful to avoid any repetition of the error. Trial record at 227–28. No one questions that this was the law of the case both on the law and measuring the adequacy of the evidence. See Lincoln Nat'l Life Ins. Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110 (en banc).