356 So.2d 579 (1978)
CLOW CORPORATION et al.
v.
J.D. MULLICAN, INC., et al.
No. 50060.
Supreme Court of Mississippi.
March 22, 1978.
*580 Watkins, Pyle, Ludlam, Winter & Stennis, Walker W. Jones, III, Ross F. Bass, Jr., Betty A. Morgan, Jackson, for appellants.
Overstreet & Kuykendall, N.W. Overstreet, Jr., Daniel, Coker, Horton, Bell & Dukes, John B. Clark, Jackson, for appellees.
Before SMITH, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
J.D. Mullican, Inc. [Mullican] filed suit in the Chancery Court, First Judicial District of Hinds County, against Clow Corporation [Clow] and Impar Enterprises [Impar] alleging that they breached their subcontract in failing to complete same, and against Insurance Company of North America [INA] for the amount of its performance bond covering Clow and Impar. Decree was entered in favor of Mullican against Clow and Impar in the sum of thirty-six thousand eight hundred nineteen dollars thirty-five cents ($36,819.35) and against INA in the sum of thirty-four thousand three hundred eighty dollars ($34,380). Clow appeals. Judgment was entered for INA against Clow in the sum of thirty-four thousand three hundred eighty dollars ($34,380), the amount of its bond, together with three thousand dollars ($3,000) attorneys' fees. Clow appeals and INA cross-appeals, claiming that the attorneys' fees were not reasonable. Mullican cross-appeals because attorneys' fees were not allowed it.
The assigned errors are interrelated and the following may be discussed together:
(1) The trial court erred in holding that Burrows had apparent authority to execute the subcontract and performance bond.
(2) Burrows did not have apparent authority to bind Clow Corporation on the performance bond.
(3) The trial court erred in overruling objections of Clow Corporation to the admission of certain documents in violation of the parol evidence rule.
*581 (4) The court erred in not directing a verdict for Clow Corporation against J.D. Mullican and Insurance Company of North America.
In April, 1973, Mullican was the prime contractor on a subdivision known as Forest Woods Estates situated in Hinds County. The project called for installation of sewage treatment facilities and on April 24, 1973, Mullican entered into a subcontract with Impar and Clow to install the plant for thirty-four thousand three hundred eighty dollars ($34,380). Previous to that contract, Mullican had negotiated with Clow, who manufactured the sewage system, for the purchase and erection of the facilities at a cost of one hundred thousand dollars ($100,000), but Clow never actually signed the contract. Subsequently, Clow and Impar divided the contract. Clow received sixty-five thousand six hundred twenty dollars ($65,620) for the plant itself, and the April 24, 1973 subcontract was for $34,380.00 for the erection of same. Those figures aggregated the total sum of $100,000 aforementioned.
Impar applied to INA for a performance bond in the amount of the contract price ($34,380). INA declined to issue the bond unless Clow joined in the application and bond. The subcontract of April 24, 1973, was executed by Impar through its officer, William C. McLain, and by Clow through William C. Burrows, District Sales Manager. In the negotiations over the subcontract and bond, Jacky Dorsey was present much of the time, advising with burrows. Dorsey was Regional Manager for Clow covering twelve (12) states, he and Burrows occupied the same office in Jackson, Mississippi, and each was cognizant of what the other was doing.
Clow and Impar had transacted approximately seven (7) such business deals previous to the Mullican subcontract. One was for a housing project known as Vickers-Bright at Pascagoula, in which Paul Pullen, agent for INA, went to the Clow office in Jackson in response to a telephone call from Burrows. Present at the meeting were Burrows and Dorsey who advised Pullen that they need a bond for the Vickers-Bright project. INA declined to insure Impar without Clow, and William C. Burrows, designated as District Manager for Clow, executed the application and the bond. The amount of that bond, dated April 11, 1973, was seventy-three thousand twenty-one dollars eighty-five cents ($73,021.85). Subsequently, the same procedure was followed in obtaining the bond on the Mullican subcontract. The following circumstances were considered by the court in finding that burrows had apparent authority to execute the subcontract and the performance bond on behalf of Clow:
(1) Dorsey was Regional Manager for Clow with authority in twelve states and burrows was District Manager for Clow.
(2) Burrows and Dorsey had, and distributed, professional cards, stationery and business forms with the Clow letterhead or insignia on them.
(3) Telephone directories and business directories indicated Jacky G. Dorsey and William C. Burrows were representatives of Clow in the State of Mississippi.
(4) Clow manufactured sewage disposal plants, was interested in selling them to customers, and wanted the erection of same completed in that time satisfactory to its customers.
(5) Clow was doing business with Impar in the erection of the plants and had worked with Impar on about seven such projects over a two-and-a-half-year period.
(6) Impar usually dealt with Burrows or Dorsey on the erection projects rather than the prime contractor, and, on most of the projects, was first advised of the existence of the work by either Dorsey or Burrows.
(7) On the project in suit, McLain, Executive Officer of Impar, never met any individual from Mullican [prime contractor] prior to the signing of the subcontract or the beginning of construction.
(8) After the bond was written, based on the Clow-Impar application, Burrows sent the executed original of the bond to Mullican with a memorandum stating, "We are looking forward to starting construction as *582 soon as possible," and it was signed, "William C. Burrows, District Sales Manager."
(9) Prior to execution of the bond, these people were indicating to all parties that Clow was really in charge of erection of these projects.
(10) On March 7, 1973, Jacky Dorsey, Regional Manager, who was present and advised Burrows to execute the bond, wrote one Gary Miller in Clow's home office [Kentucky] and referred to "Impar Enterprises, our erection sub [contractor] on this job."
(11) April 2, 1973, on the Vickers-Bright project, Dorsey wrote a letter to McLain of Impar stating, "This is to confirm that the Clow Corporation will consign the first draw of ten percent (10%) to you on the above project.
(12) On May 1, Burrows wrote Kantor, engineer on the Mullican project, sending copies of the letter to representatives of the owner, stating, "It is our intention to provide this unit ready to be used by the end of July, 1973. This, of course, provided we are not delayed by unseen conditions beyond our control."
(13) On May 18, 1973, Burrows had a telephone conversation with Pitmon, executive officer of Mullican, and made a notation on Clow's file, "He gave O.K. to install Bright homes plant first."
(14) On or about April, 1974, McLain of Impar wrote Clow a memorandum regarding material shortages stating, "Whatever part of all this Bob wants me to do I will be glad to do." The memo was directed to R. Murphy, the Clow Corporation representative at the trial, who was Clow's Field Services Manager. "Bob" was Bob Steerman, a Clow employee from the Kentucky office who had visited and "trouble shot" the Vickers-Bright job Impar and Clow had erected.
(15) On May 29, 1974, Ross Murphy of Clow Corporation in Kentucky and Delaney of that office, together with Jacky Dorsey, prepared an estimate of the cost to complete the project. On page 2 of that estimate, the term "SSP 34,380" appears. The abbreviation "SSP" is a term used in the Clow organization meaning "Standard Selling Price." The figure 34,380 is the amount of the Clow-Impar erection subcontract.
The chancellor found that Burrows and Dorsey had apparent authority to execute the subcontract along with Impar and the application and performance bond covering same, and that in executing such instruments, Burrows was acting within the scope of his apparent authority. Apparent authority is defined in Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955) as follows:
"The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent power of an agent are his real powers. 2 C.J.S. Agency §§ 95, 96. This rule is based upon the doctrine of estoppel. A principal, having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearance thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers. 2 C.J.S. Agency § 96c. There are three essential elements to apparent authority: (1) Acts or conduct of the principal; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. 2 C.J.S. Agency § 96e. All three elements concur in this case." 223 Miss. at 697-698, 78 So.2d at 883.
(1) The conduct of Clow as set forth hereinabove indicated that it had clothed its agents, Dorsey and Burrows, with authority to act in the Mullican subcontract.
(2) Johnny Pitmon, executive officer for Mullican, and Pullen, agent for INA, testified that they relied completely on the apparent authority of Dorsey and Burrows.
*583 (3) Pitmon told Kantor, the engineer, that Mullican would deal with a subcontractor only on the condition that Clow and the subcontractor both executed the subcontract. When Impar did not complete the project, Mullican was forced to complete it at additional cost and to its detriment.
The question of whether or not a person has apparent authority is a factual issue to be decided by the chancellor or by the jury, if in the circuit court. McPherson v. McLendon, 221 So.2d 75 (Miss. 1969).
In NMS Industries, Inc. v. Premium Corp. of America, Inc., 487 F.2d 292 (5th Cir.1973), a Fifth Circuit Court of Appeals case, that Court said:
"The testimony tended to show that Edwards did, in fact, use business cards, stationery and purchase orders (which bore no indication of a dollar amount limitation), with the Gold Crown ensignia, that he did have an office maintained by Gold Crown, and that he apparently had made some purchases of a similar nature for the company previously. This was surely enough to warrant the denial, in the first instance, of a directed verdict. See Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365. It was further sufficient evidence upon which the jury could have inferred that Edwards was cloaked with the authority to make such a purchase for Gold Crown." 487 F.2d at 295.
See also Cannady's Used Cars v. Dowling, 221 Miss. 293, 72 So.2d 696 (1954).
Appellant complaints that Pitmon from Mullican was permitted to testify as to what Clow originally agreed to do under the contract and that the subcontract was the final document and, therefore, evidence of all prior negotiations was inadmissible under the parol evidence rule.
Parol or extrinsic evidence is not admissible to affect, contradict, vary, modify, add to or subtract from a written instrument. Fuqua v. Mills, 221 Miss. 436, 73 So.2d 113 (1954). Evidence which does not tend to vary or contradict the written instrument is not excluded by the parol evidence rule. Valley Mills, Division of Merchants Co. v. Southeastern Hatcheries of Miss., Inc., 245 Miss. 71, 145 So.2d 698 (1962). It was not error to allow Pitmon to testify about the initial negotiations with Clow concerning the sale and erection of the sewage treatment plant because such evidence did not tend to vary or contradict the written instruments (the subcontract and performance bond) under which Clow's liability was established. See 32A C.J.S. Evidence § 930, at 312 (1962).
We are of the opinion that under all the facts of this case, together with reasonable inferences flowing from the evidence, whether or not Burrows had apparent authority to execute the instruments and whether or not he was acting within the scope of his apparent authority were issues to be determined by the chancellor, that his decision was supported by the evidence, and that there is no merit in these assigned errors.

CROSS-APPEAL
INA cross-appeals and contends that the court erred in failing to award adequate and reasonable attorneys' fees.
The undisputed evidence indicates that the time expended by attorneys for INA at their regular hourly rates was reasonable and amounted to three thousand five hundred fifty-two dollars ($3,552) and that out-of-pocket expenses reasonably incurred up to the time of trial were two hundred twenty-six dollars thirty-five cents ($226.35). The trial consumed three (3) days, the case was argued on the fourth day, and the amount of attorneys' fees allowed by the chancellor was three thousand dollars ($3,000). We are of the opinion that services performed by the attorneys through trial in the lower court should be increased by fifteen hundred dollars ($1,500) and that the motion for attorneys' fees here should be sustained and fees are allowed on this appeal in the sum of one thousand dollars ($1,000).
Mullican cross-appeals and contends that the lower court erred in not allowing reasonable attorneys' fees for it.
*584 The chancellor held that Mullican was not entitled to attorneys' fees. The performance bond provided for the payment of attorneys' fees, but there was no such provision in the subcontract, and the argument of Mullican that, because of delay on the part of Clow in the completion of the subcontract, Clow was guilty of negligence and that attorneys' fees should be assessed against it, is without merit. We are of the opinion that the chancellor correctly declined attorneys' fees for Mullican.
For the reasons stated, this case is affirmed on direct appeal, reversed on cross-appeal of INA, so as to allow attorneys' fees in the trial below in the sum of forty-five hundred dollars ($4,500), and affirmed on cross-appeal of Mullican. INA's Motion for Attorneys' Fees on Appeal is sustained and the fees fixed at one thousand dollars ($1,000).
AFFIRMED ON DIRECT APPEAL; REVERSED ON CROSS-APPEAL OF INA; AFFIRMED ON CROSS-APPEAL OF MULLICAN.
PATTERSON, C.J., SMITH, P.J., and ROBERTSON, SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.