805 So.2d 668 (2002)
Kenneth PARTRIDGE, Appellant,
v.
Bernard HARVEY, Billy Voss and Bestway Rentals, Inc., Appellees.
No. 2000-CA-02060-COA.
Court of Appeals of Mississippi.
January 22, 2002.
*669 C. Kent Haney, Clarksdale, Attorney for Appellant.
David Earl Rozier, Jr., Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, LEE, and CHANDLER, JJ.
LEE, J., for the Court.
¶ 1. In August 1999, the appellant, Kenneth Partridge, filed a complaint against Bestway Rentals, Inc. and against two Bestway employees, Bernard Harvey and Billy Voss. Partridge alleged that Harvey and Voss broke into his home without permission in efforts to repossess certain furniture and appliances and that Bestway was vicariously liable for these criminal acts of its employees. In his complaint, Partridge demanded five-hundred thousand dollars in compensatory damages and one million dollars in punitive damages. Harvey and Voss were never served and, thus, never answered the complaint. The Sunflower County Circuit Court granted summary judgment in favor of Bestway. Partridge filed a motion to set aside the order granting summary judgment, but the court denied the motion. Partridge filed a second motion to set aside the order, and attached as exhibits police reports concerning the break-in; this motion was also denied. Partridge now appeals to this Court the order granting summary judgment, arguing that Bestway was responsible for the criminal acts of its employees, thereby creating genuine issues of material fact. We review the facts and find genuine issues do exist, and we reverse and remand for a trial on the merits.

DISCUSSION OF THE ISSUES

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF BESTWAY RENTALS, INC.?
¶ 2. In May 1999, Partridge entered into a rent-to-own contract agreement with Bestway. Partridge became delinquent on his payments and two of Bestway's employees, Harvey and Voss, went to Partridge's home to repossess the items. Partridge was not at home at the time of Harvey and Voss's visit, but they *670 broke into the home and took the items, plus other items from Partridge's home. Bestway contends that the employees acted outside the scope of employment as Bestway does not condone unauthorized entry into homes for the purpose of repossession. Bestway maintains that the actions of Harvey and Voss were unforeseeable and superceding events for which Bestway should not be held liable.
¶ 3. The primary issue for review on appeal concerns the trial court's order granting summary judgment in favor of Bestway. We review such orders de novo. Yazoo Properties v. Katz & Besthoff Number 284, Inc., 644 So.2d 429, 431 (Miss. 1994).
¶ 4. Partridge argues that Harvey and Voss were acting within the course and scope of their employment when they broke into his home, and that Bestway is liable for the criminal acts of an employee when the acts are conducted within the course and scope of employment. Bestway denies any liability for the break-in, arguing such conduct was not an authorized method of repossession, thus not falling under the scope of employment. Since our standard of review is de novo, we review relevant caselaw with regard to this situation to determine whether or not a genuine issue of material fact exists as would require reversing and submitting this case to trial.
¶ 5. We first look to Horton v. Jones, 208 Miss. 257, 44 So.2d 397 (1950). Horton, like the present case, concerned liability of the employer. In Horton, the employee was a cab driver. Upon dropping a lady off at her destination, the cab driver realized the lady had left her pocketbook in the seat, so he slammed the door and sped away, waiving her pocketbook at her. In resolving whether or not the driver was acting in the scope of employment, the court applied the following principles gathered from Mississippi caselaw:
Where the servant, in committing the wrongful deed, acts about the master's business for which he is employed, the master is liable, although in doing the act, the servant stepped beyond his authority. Even though the conduct of the servant was unauthorized, it is still in the scope of his employment, if it is of the same general nature of, or incidental to, the conduct authorized. In order for the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and gone about some purpose of his own not incident to his employment. If time and logical sequence do not separate the injurious act from the business of the master sufficiently to establish a separate and independent transaction, the master is not relieved because the servant stepped outside his authority. Although a servant is not employed to be negligent, this does not mean that the wrongful act is outside the scope of employmentit may be an incident to the ultimate purpose which constitutes his job.
Horton, 208 Miss. at 261, 44 So.2d at 399 (citations omitted). Undeniably, Horton went beyond his authority in stealing the pocketbook. However, as described in the above passage, Horton was acting in the general scope of employment: (1) the act of driving his employer's car and picking up and dropping off passengers is the nature of his job duties; (2) upon seeing the pocketbook, he sped off and went to pick up another passenger, again, acting in the scope of his duties to pick up passengers; and (3) his "getaway" occurred during execution of these duties. The court found that the employer was liable because Horton was acting within the scope of employment.
*671 ¶ 6. Next, we look to Thatcher v. Brennan, 657 F.Supp. 6 (S.D.Miss.1986). In Thatcher, Brennan, the employee, was a pharmaceutical salesman who, after leaving the post office where he mailed items related to his business, pulled his car out in front of Thatcher. Thatcher, 657 F.Supp. at 8. Brennan and Thatcher, both disgruntled at the other's acts, pulled into a parking lot where they got out of their cars and physically fought. Id. The question arose whether or not in fighting, Brennan was acting in the scope of his employment, which could render his employer liable for the acts by virtue of respondeat superior.
¶ 7. To determine whether or not Brennan was acting in the scope of employment, the court looked to various rules which have been enunciated in Mississippi caselaw through the years and also looked to Prosser and Keeton's The Law of Torts which listed similar factors to apply. See Thatcher, 657 F.Supp. at 8-9. A determination must be made whether or not the employer either authorized the act prior to or ratified the act after its commission, or if the act was committed within the scope of employment. Id. at 9. The court found that since nothing had indicated that the employer either authorized or ratified Brennan's intentional assault and battery upon Thatcher, Brennan must have been acting within the scope of employment in order for the employer to be liable. Id. The Thatcher court clarified that "an employee is not necessarily acting outside the scope of his employment when he commits an intentional tort or criminal act." Id.
Acts committed by a servant are considered within the scope of employment when they "are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."
Id. Brennan was indeed authorized and required to drive a car as part of his job, but he was not authorized to assault Thatcher. Id. Also, nothing in Brennan's relationship with his employer would indicate such behavior was acceptable, plus the act of fighting was not one commonly performed by persons in his job. Id. The most that could be said about the assault was that it was within the time and place of employment, but it certainly was not done for the purpose of furthering the employer's interest. Id. The court concluded that the employer was not liable for the acts of its employee in assaulting another.
¶ 8. We apply the principles from both Horton and Thatcher to resolve the present issue. First, we look to whether or not the employer either authorized or ratified the acts of the employees. The record does not contain specific details concerning what remedial acts the employer might have taken, but Bestway states in its motion for summary judgment that "[e]ven if it is shown that Bestway's employees did take the property of Partridge, Bestway did not authorize its employees to unlawfully enter the residence of Partridge or to unlawfully take furniture and personal belongings from the residence." (emphasis added). Excerpts from the Bestway employee handbook describe the proper procedures for repossessing overdue rental property. At no place in the handbook is authorization given for an employee to enter the home by force to remove the items. Concerning ratification, no indication is given any place in the record or documents before us to show that Bestway ratified the actions of its employees, but Bestway did state in its motion for summary judgment that it did not ratify the actions. (emphasis added).
*672 ¶ 9. Having found no authorization or ratification on the employer's part, we next evaluate whether or not Harvey and Voss acted within the scope of their employment. In making such evaluation, we look to the tests described by both the Horton court and the Thatcher court for determining whether or not particular conduct is within the scope of employment. We recognize that breaking into a home, whether under the auspices of doing business or not, is certainly so unlike those acts which are authorized that it is substantially different. We also find that in no circumstances could the break-in qualify as having been within the scope of the employees' authority, since Partridge was the owner of the home and was the only one who could authorize entry into the home. In contrast, we note that Harvey and Voss were actually working to further the business of Bestway in committing the break-in to recapture the property.
¶ 10. We find it important to address "[w]hether the employee's conduct is `so unlike that authorized that it is substantially different'; ... [and w]hether the act was done in the course of and as a means of accomplishing the purposes of the employment and, therefore, in furtherance of the master's business." Thatcher, 657 F.Supp. at 8-9. The allegation here is that Bestway's employees, involved in a business that requires the physical seizure of property, took the opportunity of Partridge's absence to break into his home. Further, instead of just taking the property that might have been subject to repossession, other items were taken as well. Access to the inside of the house and physical taking of property were incident to Bestway's business, even though we accept that Bestway wanted the access and seizure to be performed within the constraints of the law. Consequently, we find that a jury issue existed of whether this means of gaining access and this measure of seizure were reasonably incidental to Bestway's business.
¶ 11. Also of relevance are the requirements cited but not quoted in a leading precedent:
(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
RESTATEMENT OF AGENCY (2d) § 228 (1958), cited in Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 59, 23 So.2d 250, 251 (1945). We find that jury issues existed of whether excessive seizure of property and use of force in a business such as repossession of property, a business reasonably likely to incite some of those targeted by it to strong reactions, are "unexpectable" and are different in kind or instead only in degree from that authorized.
¶ 12. Partridge failed to respond to Bestway's motion for summary judgment, relying on the law that the movant must meet its burden of proving there was no material issue of fact before the non-movant is required to file a response. Foster v. Noel, 715 So.2d 174 (¶¶ 35-36) (Miss. 1998). The court granted the motion without Partridge ever having filed a response, and Partridge now argues that the court erred in entering summary judgment, allegedly, in part, due to Partridge's failure *673 to file such response. We find no need to address this issue as we have already determined that reversal is warranted in this instance.
¶ 13. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.