# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01512-COA

**DONNA STURKIN AND VICKY PATRICK**                **APPELLANTS**

**v.**

**MISSISSIPPI ASSOCIATION OF**                      **APPELLEE**
**SUPERVISORS, INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/2019 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | STEVEN CRAIG PANTER |
| | RONALD EARL STUTZMAN JR. |
| | OTTOWA E. CARTER JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM ROBERT ALLEN |
| | KATELYN ADELE RILEY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED IN PART; |
| | REVERSED AND RENDERED IN PART - |
| | 11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1. Donna Sturkin and Vicky Patrick appeal from the Scott County Circuit Court's summary judgment ruling that their claims for defense and indemnification were not covered under a liability insurance policy that Patrick's employer, Leake County, Mississippi, had purchased from the Mississippi Association of Supervisors Inc. (MAS). That policy, covering not only the county itself, but also county employees, included a duty by MAS to defend them when sued and the duty to indemnify them for any judgment rendered against

them.  However, MAS withdrew its defense of Patrick in a federal lawsuit brought against her by Sturkin for a violation of Sturkin's civil rights.  MAS also refused to pay the $350,000 judgment that Sturkin obtained in that action.  Instead, MAS filed a declaratory-judgment action in the Circuit Court of Scott County, Mississippi, and ultimately sought summary judgment on the issues of its duty to defend and indemnify Patrick.  The circuit court granted MAS's motion, finding that Sturkin's claim was not covered by the policy.  Sturkin and Patrick appealed.

¶2.     After reviewing the terms of policy, arguments of counsel,  and relevant caselaw, we find that the policy exclusions do not apply to Sturkin's claim, but because there are material facts in dispute as to whether Patrick was acting in the scope of her employment, MAS is not entitled to summary judgment; therefore, the issue is remanded for resolution by a trier of fact.  Finally, because Sturkin's federal complaint pleaded claims that were arguably covered by the policy, MAS has a duty to defend Patrick.

**Facts and Procedural History**

*A.     Underlying Facts*

¶3.     On November 15, 2010, Donna Sturkin ("Sturkin"), a resident of Scott County, Mississippi, entered the Eighth Judicial District Drug Court ("Drug Court") program.

¶4.     The Drug Court in Leake, Scott, Newton and Neshoba counties was the fourth to be established in the state.  In April 2003, legislation was passed creating Drug Courts statewide.  *See* Miss. Code Ann. §§ 9-23-1 to -23 (Rev. 2018 & Supp. 2019).  A Drug Court is considered a hybrid specialized or diversion court that handles drug crimes or crimes that

2

are considered "drug driven" (to include DUI and probation violations). Its purpose is "to reduce the incidence of alcohol and drug use, alcohol and drug addiction, and crimes committed as a result of alcohol and drug use and alcohol and drug addiction." Miss. Code Ann. § 9-23-3(1).

¶5. A typical Drug Court participant is placed on probation and must adhere to stringent requirements, including periodic drug and alcohol testing. Miss. Code Ann.§ 9-23-15(3)(a). Participants are monitored by probation officers specifically assigned to the Drug Court. Pursuant to Mississippi Code Annotated section 9-23-23, "[i]f the participant completes all requirements imposed upon him by the [drug] court, including the payment of fines and fees assessed and not waived by the court, the charge and prosecution shall be dismissed." Individuals failing to meet the Drug Court requirements are sentenced to the maximum amount of time for their particular crime and ordered into the custody of the Mississippi Department of Corrections.

¶6. Sturkin's probation officer was Vicky Patrick ("Patrick"), a deputy sheriff, who was hired in 2005. Pursuant to her contract, Patrick was an employee of Leake County, Mississippi.

¶7. While participating in the Drug Court program, Sturkin underwent regular testing for drugs and alcohol and attended periodic court appearances. As Sturkin's probation officer, Patrick conducted home checks, ensured that Sturkin (and the other probationers) maintained gainful employment, collected urine samples for the random drug and alcohol tests, and

reported failures to the Drug Court judge.[1]

¶8.    While serving as her probation officer, Patrick frequently made improper demands of Sturkin. These demands included allowing Patrick to steal goods from the store at which Sturkin worked and providing Patrick, as well as her friends and family, with hotel rooms for free at the hotel where Sturkin was employed. Patrick threatened Sturkin that her failure to meet these demands would result in her incarceration.

¶9.    During the time Patrick made these demands, Sturkin reported Patrick's behavior to Marcus Ellis Jr. ("Ellis"), the coordinator of the Drug Court and Patrick's supervisor. Sturkin said that Ellis told her to take up any problems she had with Patrick herself. In a later affidavit, Ellis stated that he did not have a specific recollection of the conversation with Sturkin; however, he candidly stated that what Sturkin said was exactly how he would have responded at that point in time.

¶10.    On several occasions, after Sturkin failed to comply with Patrick's demands, Patrick reported to the circuit court judge that Sturkin had tested positive for alcohol consumption. As a result, Sturkin was incarcerated.

¶11.    Sturkin's sister, Kathy Marler, also called the Drug Court in an attempt to tell Ellis what Patrick was demanding of Sturkin. However, Marler was not allowed to speak with Ellis. Shortly thereafter, Patrick called Sturkin at the jail and told her that if her family continued to call the Drug Court, Sturkin's sentence would be extended for every phone call

---

[1] When probationers failed the drug or alcohol tests, the Drug Court judge often ordered limited jail time as a consequence.

4

that was received.

¶12.   Patrick was fired from the Drug Court on September 30, 2013, for misconduct apparently unrelated to the incidents in dispute in this action.  When Sturkin learned of Patrick's termination, she again went to speak to Ellis to discuss her experience with Patrick. After investigating her claims, Ellis found that Sturkin's allegations regarding Patrick's inappropriate demands were true.  Ellis also informed Sturkin that she had not failed any of her alcohol consumption tests.

¶13.   On August 1, 2014, Sturkin completed the Drug Court program.

   B.   *Sturkin's Federal Lawsuit*

¶14.   On June 9, 2016, Sturkin sued Patrick, Ellis, Leake County, and others[2] in the United States District Court for the Southern District of Mississippi, Cause Number 3:16-CV-434-CWR-FKB.  In her complaint, Sturkin alleged that Patrick had subjected her to regular and repeated harassment, coercion, punishment, and incarceration as a result of false reporting. Sturkin alleged that her civil rights under the Fourth and Fifth Amendments to the United States Constitution were violated by Patrick and Ellis, who had acted under color of law and in the scope of their employment.[3]

---

[2] Other defendants included Scott County, Mississippi; Neshoba County, Mississippi; and Newton County, Mississippi.  Sturkin ultimately voluntarily dismissed her claims against these counties with prejudice.

[3] On July 21, 2017, Sturkin voluntarily dismissed Ellis.  On July 27, 2017, the federal district court granted Leake County's motion for summary judgment, finding that Sturkin had failed to prove that Patrick was operating under a policy or custom and practice approved by the county's board of supervisors.  Sturkin continued her federal suit against the sole remaining defendant, Patrick.

¶15. At the time of the alleged incidents, the parties agree that Patrick was insured under a general liability policy ("the Coverage Document"), which Leake County had purchased from MAS. The Coverage Document contained numerous provisions that detailed its general liability coverage and the exclusions to coverage.

¶16. On April 13, 2017, MAS notified Patrick that it would defend her in Sturkin's federal lawsuit, but it was reserving the right to later decline to defend or deny coverage under the Coverage Document. Later, on January 31, 2018, MAS notified Patrick's attorney that it was denying payment of her defense or any indemnity based on the fact that the allegations against Patrick asserted intentional wrongdoing on Patrick's part.[4] Thereafter, Patrick was compelled to hire her own attorney at her own expense.

### C. State Court Declaratory Judgment Action

¶17. While Sturkin's federal suit against Patrick was pending, on January 22, 2018, MAS filed a declaratory judgment action against Patrick in the Circuit Court of Scott County, Mississippi, which is the subject of this appeal. MAS requested the circuit court to rule that Sturkin's claim was not covered under the policy and that MAS owed Patrick no defense. Patrick denied MAS's allegations. Sturkin was granted intervention pursuant to Rule 24(a)(2) of the Mississippi Rules of Civil Procedure. Sturkin filed a counterclaim seeking an order finding that her claim was covered by the policy and that MAS should pay any damages awarded because of it. Sturkin also demanded a jury trial on the issues. Patrick

---

[4] In the letter, MAS's counsel wrote, "The Coverage Document excludes coverage for losses incurred by the intentional acts of employees. All allegations against Ms. Patrick assert intentional wrongdoing on her part. There is, accordingly, no coverage for Ms. Patrick for the allegations in the Complaint. Coverage is, therefore, denied to her."

6

later amended her answer to include a counter-claim against MAS for, among other things, tortious breach of contract. She too asked for trial by jury.

¶18. On January 8, 2019, MAS filed a motion for summary judgment in the state court declaratory judgment action. MAS argued that it did not have a duty to indemnify nor defend Patrick because her alleged acts were intentional and undertaken outside the course and scope of her employment. MAS also argued that even if Patrick's acts were within the scope of her employment, any damages she may have caused were excluded from coverage by way of several policy exclusions. MAS conceded in its motion for summary judgment that Patrick was in fact a covered employee in general, but it contested coverage for her actions in this case.

¶19. Sturkin replied to MAS's motion for summary judgment and argued that her claim of a civil rights violation was covered by the policy. Further, she argued that Patrick's actions were in fact committed within the scope of her employment or, in the alternative, that there were facts in dispute concerning this issue that a jury should resolve. Further, even if the court found that Patrick's actions were not within the scope of her employment, Sturkin argued they were incidental or of a similar kind to the acts Patrick routinely performed in her employment or that Ellis had ratified them. Patrick also responded to MAS's motion, presenting arguments similar to Sturkin's but also pointing out that the duty to defend is broader than the duty to indemnify.

¶20. Prior to any ruling in the declaratory action, Sturkin's federal case was tried. On January 25, 2019, in response to interrogatories presented to it, the jury found that Patrick

7

had violated Sturkin's civil rights and that Patrick did not have qualified immunity. The jury returned a verdict in favor of Sturkin and awarded her $350,000 in damages with interest accruing at 2.58%.[5] The federal district court later awarded Sturkin attorney's fees in the amount of $69,962.25 and costs of $636.49.

¶21. On September 9, 2019, the Scott County Circuit Court entered an order in the declaratory judgment action granting summary judgment in favor of MAS. The court, giving no specifics, held that

> based on the terms of the applicable insurance policy, Patrick was not entitled to any defense or indemnification by MAS for any loss or damages in connection with the civil action styled *Donna Sturkin v. Vicky Patrick, Marcus D. Ellis Jr., Leake County, Mississippi, Scott County, Mississippi, Neshoba County, Mississippi, Newton County, Mississippi, John Does 1-5*, Cause Number 3:16-CV-434-CWR-FKB.

¶22. On September 30, 2019, Sturkin and Patrick appealed from the circuit court's judgment. They raise the following issues on appeal: (1) whether Sturkin's claim was covered by the policy, and (2) whether MAS owed Patrick a duty to defend.

**Standard of Review**

¶23. "[An appellate court] conducts a de novo standard of review when considering a lower court's grant of summary judgment." *Howard v. Rolin Enters LLC*, 284 So. 3d 772, 775 (¶5) (Miss. Ct. App. 2019) (quoting *Levens v. Campbell*, 733 So. 2d 753, 757 (¶10) (Miss. 1999)). "This entails reviewing all the evidentiary matters before it in the light most favorable to the party against whom the motion has been made." *Id*. "If, in this view, the moving party is

---

[5] Patrick unsuccessfully appealed the final judgment entered in Sturkin's favor to the Fifth Circuit Court of Appeals. *See Sturkin v. Patrick*, 787 F. App'x. 247 (5th Cir. 2019).

8

entitled to judgment as a matter of law, summary judgment should be affirmed; otherwise, it should be reversed." *Id.* "The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact." *Jamison v. Barnes*, 8 So. 3d 238, 242 (¶7) (Miss. Ct. App. 2008). "The Court proceeds under a de novo standard of review for any interpretation of an insurance policy . . . because interpretation of an insurance policy is a question of law, not one of fact." *Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 551 (¶24) (Miss. 2019); *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (¶18) (Miss. 2009).

**Discussion**

*Relevant Principles of Insurance Law*

¶24.     The case before us requires an examination of the provisions of Leake County's liability-insurance policy to determine whether the circuit court was correct in finding that Sturkin's claim was not covered and that MAS had no duty to defend or indemnify Patrick. "The interpretation of an insurance policy is a question of law, not one of fact." *Id.* Because insurance policies are contracts, they are interpreted according to the same rules that govern other contracts. *Krebs By and Through Krebs v. Strange*, 419 So. 2d 178, 181 (Miss. 1982). "In interpreting an insurance policy, the Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Union Ins. Co. v. E. Main Package Store Inc.*, No. 1:18-CV-98-SA-DAS, 2019 WL 4601840, at *3 (N.D. Miss. Sept. 23, 2019) (quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (¶8) (Miss.

9

1998)). "A construction leading to an absurd, harsh or unreasonable result in a contract should be avoided unless the terms are express and free of doubt." *Frazier v. Ne. Miss. Shopping Ctr. Inc.* 458 So. 2d 1051, 1054 (Miss.1984).

¶25.  "A clear and unambiguous contract will be enforced as written." *S.C. Ins. Co. v. Keymon*, 974 So. 2d 226, 230 (¶12) (Miss. 2008).[6]  Yet "an insurance policy is construed most strongly against the insurer as the drafter of the policy." *Progressive Gulf Ins. Co. v. We Care Day Care Ctr. Inc.*, 953 So. 2d 250, 253 (¶11) (Miss. Ct. App. 2006).  Clauses seeking to omit coverage "must be written in clear and unmistakable language and are strictly construed." *Progressive Gulf Ins. Co.*, 953 So. 2d at 254 (¶12). If a contract contains ambiguities, then the ambiguities must be resolved in favor of the non-drafting party. *Architex Ass'n Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (¶21) (Miss. 2010). Applying these principles, we turn to the issues raised by the parties in this case.

## I.  Whether Sturkin's claim is covered by the MAS policy.

¶26.  Sturkin obtained a judgment against Patrick for Patrick's violation of her civil rights. The Coverages provision in Section III of the policy states:

> B.  This Coverage Document applies to . . . **personal injury**, . . . only if:
>
> . . . .
>
> > 2.  a. The personal injury . . . is caused by an offense committed in the coverage territory; and

---

[6] In that case, the South Carolina insurance policy specifically excluded injury from the sale of alcohol to a minor, which was the act that caused the death of a child in an accident with a minor who had been sold liquor by the insured. *Id.* at 232 (¶15).  The Mississippi Supreme Court held that the policy was not ambiguous.

b. The offense is committed during the coverage period.

"**Personal injury**" is defined elsewhere in the policy as:

T. **Personal injury** means injury, arising out of your business, other than bodily injury or advertising injury, arising out of one or more of the following offenses:

. . . .

6. **In the conduct of your law enforcement operations, personal injury also means injury** . . . arising out of any of the offenses listed above, or out any of the following offenses:

e. **Violation of civil rights.** . . .

(Emphasis added). The parties do not dispute that Sturkin's claim is one for violation of her civil rights which appears to be a covered claim. What MAS disputes, however, is whether Patrick was covered by the policy at the time she violated Sturkin's civil rights.

¶27. The relevant policy provision concerning coverage of employee actions reads:

**D.    WHO IS COVERED**

For the purposes of the General Liability Cover, *each* of the following is a covered **member:**

A. The **Named Member**

. . . .

C. Your **employees** and authorized volunteers, but only for *acts within the scope of their employment or as authorized by you*.

(Emphasis added). The "Named Member" is Leake County which purchased the policy and is itself covered. While MAS agrees that Patrick was Leake County's "employee" at all

11

relevant times, MAS contends that Patrick's actions were not performed "within the scope of her employment."[7]

¶28.    Despite containing several pages of definitions, the policy contains no definition for "scope of employment."   Usually our role then would be to render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban*, 20 So. 3d at 609 (¶17); *Progressive Gulf*, 953 So. 2d at 235 (¶11).  We could consult secondary sources, as the *Corban* court did, such as the Oxford Dictionary for definitions of the words "scope" and "employment."  However, we recognize that the phrase "scope of employment" is a term of art with a special meaning under the law.  It is the method used in tort law to establish the liability of an employer for the conduct of its employees. Assuming that the parties to this insurance contract (Leake County and MAS) intended to limit coverage of claims, even civil rights violations claims, only to employee conduct that can be deemed to be within the scope of their employment, we must then determine whether the circuit court here correctly held that there were no genuine issues of material fact and that as a matter of law, Patrick's conduct was outside the scope of her employment.

¶29.    When a party establishes an employer-employee relationship, a rebuttable presumption arises that the employee was acting within the scope of his employment:

> Where the general relationship of master and servant is shown a rebuttable presumption is raised that the servant at the time of the accident was engaged

---

[7] However, we note that there is no such limiting language in the coverage section of civil rights violations, i.e., no requirement that the violations be committed within the scope of the employee's employment.

in the scope of his employment and in the furtherance of the business of the master. While such a presumption is not conclusive it is nevertheless sufficient to make out plaintiff's case and demands proof in rebuttal thereof.

*West v. Aetna Ins. Co. of Hartford*, 208 Miss. 776, 45 So. 2d 585, 586 (1950) (citations omitted). The burden of proof then shifts to the employer to show that the employee had abandoned the duties of his employment and acted for some purpose exclusively his own. *Colotta v. Phillips*, 226 Miss. 870, 85 So. 2d 574, 577 (1956).

¶30. While articulated in different ways, conduct of an employee falls within the scope of his employment if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if intentionally used by the servant against another, the use of force is not unexpectable by the master." *Booth v. S. Hens Inc.*, 244 So. 3d 888, 890 (¶8) (Miss. Ct. App. 2018) (citing *Children's Med. Grp. P.A. v. Phillips*, 940 So. 2d 931, 935 (¶13) (Miss. 2006)).

¶31. An employee will be deemed to be acting outside the scope of his employment when his actions, though taken while at work, are unrelatable to his employment. If an individual is performing duties within the course and scope of their employment but deviates from those authorized duties and commits an unauthorized act, not incidental to their employment, such act may be found to be outside the scope of their employment. *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361-62 (¶14) (Miss. 2004). For example, in *Howse ex rel. Blasingame v. Brentwood Behavioral Healthcare of Mississippi*, 139 So. 3d 125, 130 (¶16) (Miss. Ct. App. 2014), we found that an employee at Brentwood was not acting within

13

the course and scope of his employment when he assaulted Howse, a patient at the facility.

*Id*. at 130 (¶16).

¶32.   But "unauthorized acts do not necessarily fall outside the scope of employment when they are of the same general nature as the conduct authorized or incidental to that conduct." *Townsend v. What a Combo Inc.*, 281 So. 3d 43, 47 (¶14) (Miss. Ct. App. 2019).

> Tortious acts incidental to the authorized conduct fall within the course and scope of employment. But unauthorized acts do not necessarily fall outside the scope of employment when they are of the same general nature as the conduct authorized or incidental to that conduct.

*Id.*  Often a jury must decide whether an employee's acts are incidental to their regular job duties.  For example, in *Partridge v. Harvey*, 805 So. 2d 668 (Miss. Ct. App. 2002), two rent-to-own store (Bestway) employees broke into Partridge's home to repossess furniture and appliances after Partridge had become delinquent in his payments.  *Id*. at 669 (¶1).  While doing so, the employees also took other items from Partridge's home.  *Id*. at 670 (¶2).  The employer claimed that he could not be held responsible for the criminal acts of his employees.  *Id*. at 669 (¶1).  The circuit court granted the employer's motion for summary judgment.  *Id*.  But after reviewing the facts, we reversed and remanded the case, saying:

> The allegation here is that Bestway's employees, involved in a business that requires the physical seizure of property, took the opportunity of Partridge's absence to break into his home. *Further, instead of just taking the property that might have been subject to repossession, other items were taken as well.* Access to the inside of the house and physical taking of property were incident to Bestway's business, even though we accept that Bestway wanted the access and seizure to be performed within the constraints of the law.  Consequently, we find that a jury issue existed of whether this means of gaining access and this measure of seizure were reasonably incidental to Bestway's business.

*Id*. at 672 (¶10) (emphasis added).

14

¶33.    Illustrating the overall analysis is the case of *Colotta v. Phillips*, 85 So. 2d 574 (Miss. 1956), where the rebuttable presumption of an employer-employee relationship was established, to which the employer responded that the employee's actions were not incidental to his duties, creating a question for the jury to resolve.  There the driver of Colotta's company truck hit a pedestrian.  *Id*. at 576.  Colotta claimed that he had not authorized the route the driver had taken.  *Id*. at 577.  The supreme court said that "it is presumed the driver, Moon, was at the time engaged in the scope of his employment" and that the burden was on Collotta to prove that Moon had "abandoned the duties of his employment and went about some purpose exclusively his own which was not incidental to his employment."  *Id.*

> In order to relieve a master from liability for the servant's acts, on the ground that the servant had deviated from his service, the deviation must be so substantial as to amount to an entire departure therefrom and be for purposes entirely personal to the servant.

*Id*.  Where there is any doubt, the issue must be submitted to the jury with appropriate instructions.  *Id.*; *see also Allen v. Ritter*, 235 So. 2d 253, 255 (Miss. 1970) (proof presented on the issue of liability of principal for agent's actions required resolution by a jury); *Primos v. Gulfport Laundry & Cleaning*, 128 So. 507, 509 (1930) (whether laundry truck driver was acting in the scope of employment when collision occurred when he was returning from a dance at which he claimed he was also soliciting business for the laundry was a question for the jury); *Javier v. City of Milwaukee*, 670 F.3d 823, 830 (7th Cir. 2012) (in a suit for a shooting by a police officer it was prejudicial error for the court to refuse a jury instruction that "a police officer can be acting within the scope of his employment even if the officer acted intentionally or criminally, and even if the officer's use of force was excessive or the

15

officer misuse his authority to use force").

¶34. Moreover, when there are genuine issues of material fact on the question of scope of employment, the matter should be fully fleshed out in a trial, and not decided upon summary judgment. In *Singley v. Smith*, 739 So. 2d 448, 449 (¶1) (Miss. Ct. App. 1999), we held that whether an assistant baseball coach was acting within the course and scope of his official duties to be entitled to immunity was not appropriately decided on summary judgment. In that case, the assistant baseball coach, Smith, was overseeing a booth at a PTO fund-raising event. *Id.* at (¶3). Participants would throw baseballs and a radar gun would "clock" the speed. *Id*. at (¶2). An errant ball struck Linda Singley in the face, severely injuring her eye. *Id*. at (¶4). She sued Smith, among others, but the circuit court granted Smith summary judgment because it found that Smith was a public employee acting within the scope of his employment. *Id.* at (¶1). Singley appealed and we reversed because there were genuine issues of material fact as to whether Smith was acting in his official capacity. *Id.* at 451 (¶14). Interestingly, in that case the circuit court would be the ultimate fact finder at Smith's trial because of his claimed immunity under the Mississippi Torts Claims Act. But we still reversed the circuit court's ruling on summary judgment. We said:

> It may be that the question of whether Smith was acting within the course and scope of his official duties as assistant baseball coach is one that the trial court, rather than the jury, will ultimately be required to rule upon. *See, e.g.*, *Lovett Motor Co. v. Walley*, 217 Miss. 384, 64 So. 2d 370, 372 (1953) ("The question as to whether or not the servant in the particular instance was acting within the scope of his employment is a question of law for the court if there is no conflict in the facts . . . ."). However, that fact does not, of itself, make the question one that can be resolved under summary judgment procedures. Even if the authority to rule on the question lies with the trial court, the parties are entitled to make a full presentation of all available evidence on the issue in

16

open court and to have the opportunity to vigorously test the opposing party's evidence through cross-examination before the matter can be properly resolved.

*Singley*, 739 So. 2d at 450-51 (¶12).

¶35. In the case at hand MAS argues that when Patrick made inappropriate demands of Sturkin and falsely reported Sturkin's alcohol test results, Patrick "abandoned her employment and was about some purpose of her own," thus removing Patrick from the scope of coverage.[8] Sturkin contends that Patrick was performing her professional duties when she visited Sturkin's job to ensure that she was maintaining employment. Patrick's job also required her to administer and report the results of alcohol consumption tests. Sturkin contends that Patrick had not abandoned her duties; rather, in her performance of those duties, she violated Sturkin's civil rights. Moreover that Patrick may submit a false report or otherwise intentionally violate Sturkin's rights is actually envisioned in the MAS policy

---

[8] At oral argument, MAS's counsel also argued that Patrick was not acting within the scope of her employment because the jury in Sturkin's federal case found that Patrick was not entitled to the defense of qualified immunity. But acting within the scope of one's employment is also irrelevant to establishing the defense of qualified immunity in civil rights cases. A government official enjoys qualified immunity if his conduct does not violate a clearly establish statutory or constitutional right that a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

> There are two steps in the Court's analysis. First, the Court determines whether the defendant's conduct violates an actual constitutional right. Second, the Court must consider whether the defendant's actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question.

*D.M. v. Forrest Cnty. Sheriff's Dep't*, No. 2:20-CV-48-KS-JCG, 2020 WL 4873486, at *5 (S.D. Miss. Aug. 19, 2020). Whether a defendant is found to enjoy qualified immunity does not determine whether he was or was not acting in the scope of his employment.

which defines "Law Enforcement Wrongful Acts" as "any actual or alleged act, error or omission, neglect, or *breach of duty* by a member . . . ." (Emphasis added).

¶36.    Sturkin also raises the "ratification" of Patrick's actions by Ellis's negligence in failing to intervene as an additional fact relevant to the issue of scope of employment. Ratification is another method for establishing employer liability.  "An employer is likewise vicariously liable for intentional torts committed in the course and scope of employment, or for those it authorized, or for those it ratified." *Jones v. B.L. Dev. Corp*., 940 So. 2d 961, 966 (¶17) (Miss. Ct. App. 2006).  But in *Jenkins v. Cogan*, 238 Miss. 343, 119 So. 2d 363 (1960), the discussion of employer liability by ratification indirectly linked this concept to the analysis of an employee's scope of conduct as well.  In that case, Cogan was injured in an explosion caused by Willis's negligent removal of the gas cap to Cogan's gas-propelled truck. *Id.* at 365.  Cogan sued not only Willis, but Willis's employer, Jenkins.  *Id*.  The case was tried to a jury which found for Cogan.  *Id.*  Jenkins appealed, contending that the circuit erroneously overruled his motion for directed verdict.  *Id.* at 367.  The supreme court said:

> We think that the conflicting testimony created an issue of fact for the determination of the jury as to whether or not Willis negligently removed the valve in question. It is not questioned that if Willis removed the valve he was guilty of negligence in doing so. We think that the conflicting testimony further raised an issue of fact as to whether or not the appellant knew or should have known that Willis was working on butane or propane propelled trucks and acquiesced therein, and *whether or not the appellant thereby impliedly authorized the said Willis so to do, and, therefore, whether or not at the time of the explosion the said Willis was acting within the scope of his implied or apparent authority.* These issues were submitted to the jury under appropriate instructions and the jury resolved such issues in favor of the appellee, and in our opinion were warranted under the evidence in doing so. It is our conclusion, therefore, that the foregoing contentions of the appellant are not well founded.

18

*Id*. at 368 (emphasis added). In this case, Sturkin claims that Ellis's inaction operated as authorization of Patrick's conduct, leading Patrick to continue to act as she did.

¶37. At the summary judgment stage, a dispute of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmovant. " *Brown Lakeland Propes v. Renasant Bank*, 243 So. 3d 784, 790 (¶17) (Miss. Ct. App. 2018) (citing *Frazier v. McDonald's Rests. of Miss. Inc.*, 102 So. 3d 341, 345 (¶21) (Miss. Ct. App. 2012)). At first blush, it may appear that there is no dispute of facts as to whether Patrick was acting outside the scope of her employment. However, Sturkin has established the employer-employee relationship creating a rebuttable presumption that Patrick was acting in the scope of her employment. Whether MAS's rebuttal sufficiently overcomes this presumption is for the jury to decide. Here Patrick says in her affidavit, without further elaboration, that she did what she did to further the goals of the drug court. Whether she believes this because Ellis never stopped her or if that explanation is even credible, is for a jury to decide. As noted in *Adams v. Cinemark*, 831 So. 2d 1156,1159 (¶10) (Miss. 2002), "a multitude of factors and circumstances must be considered, such as [an employee's] responsibilities and mind-set, as well as those of a temporal and spatial nature" to determine if conduct is "incidental to" employment.[9]

¶38. Further, a jury may conclude that Patrick violated Sturkin's civil rights while performing tasks she normally performed, albeit performing them wrongfully and find she

---

[9] The record does not contain any testimony from Sturkin's federal case. So neither we nor the circuit court knows what Patrick may have said in the past or will say in the future concerning these matters.

19

still acted in the scope of her employment as in the case of the repossesors in *Partridge*. Still other facts may emerge or be developed at trial when the parties are able to cross-examine witnesses and present their case fully to the jury. As we noted in the *Singley v. Smith*:

> Even were we to conclude that, based on the evidence now in the record, there was every indication that Smith would prevail on the question after a full development of all relevant evidence, it would be improper to affirm this summary judgment award. The party opposing a summary judgment award, in order to be successful in that opposition, need not present a greater quantum of evidence on the point than the movant. Rather, the opposing party need only present enough evidence to demonstrate that there is a genuine dispute as to the particular material fact on which the movant relies for his entitlement to judgment.

*Singley*, 739 So. 2d at 451. In this case, Sturkin has presented sufficient evidence to demonstrate a genuine issue of material fact concerning whether Patrick's conduct was within the scope of her employment. Moreover, in our opinion, a reasonable jury could find for Sturkin when presented all the facts at trial.

¶39. Accordingly, we find that there are genuine issues of material facts in dispute concerning whether Patrick was acting in the scope of her employment when she violated Sturkin's civil rights that preclude summary judgment. Therefore, we reverse the circuit court's finding that Sturkin's claim was not covered by the MAS policy and remand the issue for the jury to resolve.

## II. Whether Sturkin's claim was excluded under the MAS policy.

¶40. While we do find that there are genuine issues of material fact in dispute on the question of whether Patrick acted in the scope of her employment, we do not find any

20

disputes of fact that relate to whether Sturkin's claim is excluded by the MAS policy. MAS argues that even if Patrick were found to have acted in the scope of her employment, Sturkin's civil rights violation claim is still excluded under three exclusions contained the policy. Accordingly, there being no dispute of facts on these, we address each.

### A. Intentional Injury Exclusion

¶41. This exclusion in the policy reads:

This coverage does not apply to:

> A.  Bodily injury or property damage expected or intended from the standpoint of the member.

As has been discussed, a covered "member" includes the county purchasing the policy and its employees acting in the scope of their employment. MAS contends that Patrick's actions towards Sturkin were intentional, thus, precluding the claim. However, as Sturkin points out, this exclusion relates only to claims for "bodily injury." Sturkin did not claim "bodily injury," but rather mental and emotional distress, as MAS's corporate deponent even agreed. Emotional and mental distress damages are not the same as bodily injury. *See Allstate Ins. v. Melton*, 482 F. Supp. 2d 775, 782 (S.D. Miss. 2017). The clear and unmistakable language of this exclusion must be strictly construed against the insurer and in favor of the insured. *Corban*, 20 So. 3d at 609 (¶20). Accordingly, we hold that Sturkin's claim was not barred by the intentional actions exclusion.

### B. Penal Statute Exclusion

¶42. The MAS policy also excludes

[p]ersonal injury . . .

> 3.    [a]rising out of the willful violation of a penal statute . . .
>        committed by the member . . . .

MAS argues that Sturkin's claim was excluded because Patrick violated a penal statute when she falsely reported Sturkin's alcohol test results to the court.

¶43.   The Mississippi Code Annotated defines the crime of perjury as:

> Every person who shall wilfully and corruptly swear, testify, or affirm falsely to any material matter under any oath, affirmation, or declaration legally administered in any matter, cause, or proceeding pending in any court of law or equity, or before any officer thereof, or in any case where an oath or affirmation is required by law or is necessary for the prosecution or defense of any private right or for the ends of public justice, or in any matter or proceeding before any tribunal or officer created by the Constitution or by law, or where any oath may be lawfully required by any judicial, executive, or administrative officer, shall be guilty of perjury, and shall not thereafter be received as a witness to be sworn in any matter or cause whatever, until the judgment against him be reversed.

Miss. Code Ann. § 97-9-59 (Rev. 2014).  The statute clearly penalizes statements made under oath or affirmation.  In this case, there is no proof, and the parties appear to agree, that Patrick's false reports of the results of Sturkin's alcohol tests were not given under oath.  Therefore, Parick did not violate any penal statute and Sturkin's claim was not excluded because of this provision.

### C.    Employment-related Practices Exclusion

¶44.   The MAS policy excludes personal injury arising out of certain potential wrongdoing in the workplace:

This coverage does not apply to

> R.    [p]ersonal injury . . . arising out of any actual or alleged:
>
> 3.    [c]oercion, . . . harassment, . . . or any

22

other employment-related acts . . . .

> With respect to personal injury in the conduct of
> law enforcement operations, this exclusion shall
> not apply.

MAS argues that Sturkin's claim is excluded under this provision because it arose out of Patrick's coercion and harassment of Sturkin. However, MAS's argument fails because the exclusion, as clearly and unmistakably written, applies to employer-employee interactions in the workplace—not to third parties. Moreover, because Patrick was a drug court probation officer, she was undisputably engaged in a "law enforcement operation" and her actions were clearly excepted from this exclusion. Sturkin's claim is not excluded by this provision.

¶45.    Accordingly, the circuit court erred in finding that MAS's policy exclusions barred Sturkin's claim, and hold that Sturkin's claim is not excluded from coverage under any policy exclusion.

### III.    Whether MAS had a duty to defend Patrick's claim.

¶46.    The duty to defend is broader than the insurer's duty to indemnify. *Titan Indemnity Co. v. Pope*, 876 So. 2d 1096, 1101 (¶14) (Miss. 2004). They are distinct and separate duties requiring the use of different standards. *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). A duty to defend arises when there is any potential for liability under the policy. *Titan*, 876 So. 2d at 1101 (¶14); *St. Paul Fire & Marine Ins. Co. v. Renegade Super Grafix, Inc.*, 209 F. Supp. 3d 895, 904 (S.D. Miss. 2016).

¶47.    "Under Mississippi law, an insurer's duty to defend an action against its insured is measured, in the first instance, by the allegations in the plaintiff's pleadings." *Titan*, 8876

23

at 1100 (¶13), (quoting *EEOC v. S. Pub. Co.*, 705 F. Supp. 1213, 1215 (S.D. Miss.1988)).

"[I]f the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises." *Guideone Am. Ins. Co. v. Parker*, No. 1:13-CV-00005-GHD, 2014 WL 2154296, at *2 (N.D. Miss. May 22, 2014). An insurer has an "absolute duty to defend a complaint which contains allegations covered by the language of the policy," independent from its duty to indemnify. *St. Paul Fire & Marine Ins. Co.*, 209 F. Supp. 3d at 904 (quoting *Moeller v. Am.Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss.1996).

> Mississippi has adopted the "allegations of the complaint" rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend, pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy. If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises.

*Nat'l Cas. Co. v. Franklin County*, 718 F. Supp. 2d 785, 789 (S.D. Miss. 2010) (quoting *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n*, 442 F. Supp. 2d 344, 346 (S.D. Miss. 2006).

¶48.   In this case, Sturkin filed a complaint against Patrick in federal court "pursuant to 42 U.S.C. Section 1983 for violation of the rights, privileges and immunities secured to her by the Constitution and laws of the United States." The complaint pleaded that Sturkin was "regularly and repeatedly subjected to violations of her rights" by Patrick, who was "acting under color of law." Sturkin also pleaded that Patrick was acting in the scope of her employment as a probation officer and that Patrick was performing law enforcement activities when these violations took place. There is no dispute among the parties that Patrick was an insured under the MAS policy which covered claims for civil rights violations if

24

Patrick was acting in the scope of her employment. Because the allegations of potential civil rights violations were pleaded in Sturkin's federal complaint and such claims are arguably covered under the policy, Patrick was entitled to a defense. Therefore, MAS breached its duty to defend Patrick when it ceased representing her and Patrick is entitled to reimbursement for the attorneys fees she has thus far been required to pay after MAS counsel withdrew its defense. We remand this matter to the circuit court to determine that amount. Moreover, because the matter of whether Patrick acted within the scope of her employment has not yet been resolved, MAS should pay for Patrick's representation in the future.

### Conclusion

¶49. We reverse the circuit court's grant of summary judgment for MAS. There are genuine issues of material fact in dispute as to whether Patrick was acting within the scope of her employment when she violated Sturkin's civil rights, thereby precluding summary judgment on the issue of whether Sturkin's claim was covered under the policy. But there being no dispute of material facts relating to exclusions in the MAS policy, we hold that Sturkin's claim is not excluded under any of them. The matter of Patrick's scope of employment and coverage of Sturkin's claim is remanded for trial by jury.

¶50. Further, we find that the circuit court erred in granting summary judgment for MAS on its duty to defend Patrick because the allegations of the complaint pleaded a civil rights violation that was potentially covered by the policy. We require that MAS pay for Patrick's future representation and reimburse her for fees she has expended in an amount to be determined on remand by the circuit court.

25

¶51.   **REVERSED AND REMANDED IN PART;  REVERSED AND RENDERED IN PART.**

**WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. CARLTON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND GREENLEE, J.**

**WILSON, P.J., DISSENTING:**

¶52.   Vicky Patrick, a former drug court probation officer, was sued for allegedly causing Donna Sturkin, a former drug court participant, to be wrongfully incarcerated.  According to Sturkin's complaint, Patrick threatened to have Sturkin incarcerated unless Sturkin (a) gave Patrick free hotel rooms at a hotel at which Sturkin worked and (b) allowed Patrick to steal from a store at which Sturkin worked.  Sturkin alleged that when she failed to comply with Patrick's demands, Patrick falsely reported that she had failed an alcohol test and caused her to be wrongfully incarcerated.  A federal jury found in favor of Sturkin, and she obtained a judgment against Patrick for $350,000 plus attorney's fees and costs.

¶53.   The issues in this case are whether the Mississippi Association of Supervisors (MAS) had a duty to defend or has a duty to indemnify Patrick under an insurance policy issued to Patrick's employer, Leake County.  The policy covers claims against county employees "but only for acts within the scope of their employment or as authorized by [the county]." Because the conduct for which Patrick was sued and held liable was neither within the scope of her employment nor authorized by the county, the circuit court correctly held that MAS had no duty to defend or indemnify Patrick.  I would affirm the circuit court's judgment on that ground.  Accordingly, I respectfully dissent.

¶54. An insurer's "duty to defend is broader than [its] duty to indemnify" because the duty to defend is triggered by a complaint against an insured that alleges "any potential basis for liability under the policy." *Rogers v. Allstate Ins.*, 938 So. 2d 871, 875 (¶15) (Miss. Ct. App. 2006) (quoting *Merchants Co. v. Am. Motorists Ins.*, 794 F. Supp. 611, 617 (S.D. Miss. 1992)). An insurer "has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend . . . claims which fall outside the coverage of the policy." *Farmland Mut. Ins. v. Scruggs*, 886 So. 2d 714, 719 (¶19) (Miss. 2004). In addition, because the duty to defend is broader than the duty to indemnify, "there can be no duty to indemnify" where "there is no duty to defend." *Isom v. Valley Forge Ins.*, 716 F. App'x 280, 287 (5th Cir. 2017); *accord Evanston Ins. v. Neshoba Cnty. Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346 n.1 (S.D. Miss. 2006) ("[I]f there is no duty to defend, there can be no duty to indemnify.").

¶55. The critical issue in this case—for purposes of both the duty to defend and the duty to indemnify—is whether the conduct for which Patrick was sued and held liable was "within the scope of [her] employment." We apply a four-part test to determine whether an employee's conduct is "within the scope of employment":

> (1) Conduct of a servant is within the scope of employment if, *but only if*:
>
> (a) It is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and

> (d)    if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2)    Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Mar-Jac Poultry MS LLC v. Love*, 283 So. 3d 34, 37 (¶12) (Miss. 2019) (quoting *Marter v. Scott*, 514 So. 2d 1240, 1242-43 (Miss. 1987) (quoting Restatement (Second) of Agency § 228 (1958))).

¶56.    Thus, an employee who is acting purely for her own personal interest and not to serve her employer's interest is not within the scope of employment. For example, an employee who embezzled money "for her own personal gain" and with "no benefit to" her employer was not within the scope of her employment. *Akins v. Golden Triangle Planning & Dev. Dist. Inc.*, 34 So. 3d 575, 579-81 (¶¶12-21) (Miss. 2010). Likewise, a police officer who attempted to kiss an arrestee was not within the scope of his employment, although the officer had "acted within the scope and course of his duties when he arrested [the woman]." *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361-63 (¶¶11-19) (Miss. 2004). When the officer "diverted from his employment for personal reasons"—i.e., "to satisfy his lustful desires"—"he was no longer acting in furtherance of his employer's interests." *Id.* at 361-62 (¶¶12, 17).

¶57.    The same is true in this case. Patrick abused her position to obtain free hotel rooms and merchandise for herself. Her conduct was not "actuated" in any part "by a purpose to serve" her employer, Leake County. *Mar-Jac Poultry*, 283 So. 3d at 37 (¶12). Therefore, her conduct was not within the scope of her employment, *id.*, and the circuit court correctly

held that MAS had no duty to defend or indemnify her.

¶58.     Patrick and Sturkin also make an alternative argument that coverage exists under the MAS policy because Leake County allegedly "ratified" Patrick's conduct. However, this argument has no basis in the language of the policy.[10] "An employer is . . . vicariously liable for intentional torts committed in the course and scope of employment, or for those it authorized, or for those it ratified." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (¶17) (Miss. Ct. App. 2006). Thus, ratification is a common law theory under which an employer may be held vicariously liable for torts committed by an employee outside the scope of employment. That theory is inapplicable in this case because Sturkin does not seek to hold Leake County vicariously liable for Patrick's conduct—indeed, Leake County is not even a party to this case. In this case, Patrick and Sturkin argue that the MAS insurance policy required MAS to defend *Patrick* against claims asserted against her *personally* and requires

---

[10] Because "ratification" is not a basis for coverage under the policy, it is unnecessary to address Patrick's/Sturkin's claim that Leake County "ratified" Patrick's misconduct solely because Patrick's immediate supervisor, Marcus Ellis, allegedly failed to investigate complaints about Patrick. However, I doubt that the alleged inaction of a single county employee can establish "ratification" by Leake County. In general, a county speaks only through the official actions of its board of supervisors and cannot be estopped by the unauthorized actions of individual employees. *See, e.g.*, *Oktibbeha Cnty. Bd. of Educ. v. Town of Sturgis*, 531 So. 2d 585, 589 (Miss. 1988) ("[I]t is . . . a well-established rule in Mississippi that the doctrine of equitable estoppel cannot be applied against the state or its counties where the acts of their officers were unauthorized."); *Bd. of Supervisors of Tishomingo Cnty. v. Dawson*, 208 Miss. 666, 672, 45 So. 2d 253, 256 (1950) ("[B]oards of supervisors can bind counties . . . only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes . . . ."). In addition, the federal district court dismissed Leake County from the federal lawsuit because there was no evidence that Leake County "ratified" any sort of "custom" that permitted Patrick's conduct or caused Sturkin's injuries. *Sturkin v. Patrick*, No. 3:16-CV-434-CWR-FKB, 2017 WL 3220362, at *2 (S.D. Miss. July 27, 2017).

MAS to indemnify *Patrick* for a judgment entered against her *personally*. Any such duty must arise from the language of the insurance policy—not a common law theory of vicarious liability.

¶59. The MAS insurance policy provides that claims against county employees are covered "only for acts within the scope of their employment or as authorized by [the county]." As discussed above, Patrick's conduct was not "within the scope of [her] employment," and there is no evidence that Leake County "authorized" her abuse of power. Under the policy, there is no other basis for coverage of claims against an employee. The policy does not obligate MAS to defend or indemnify a employee solely because the employee's conduct was allegedly "ratified" after the fact.[11]

¶60. In summary, MAS had no duty to defend and has no duty to indemnify Patrick because Patrick was sued and held liable for conduct outside the scope of her employment. The order of the circuit court granting summary judgment in favor of MAS should be affirmed on that ground. I respectfully dissent.

**BARNES, C.J., AND GREENLEE, J., JOIN THIS OPINION.**

---

[11] This makes sense. Otherwise, the policy owner (Leake County) could unilaterally expand coverage and the insurer's obligations under the policy by an after-the-fact "ratification" of an employee's conduct. This would grant the policy owner a unilateral power to require the insurer to provide a defense and indemnity for claims against employees that the policy did not cover at the time of the underlying conduct by the employee.

30